[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14388
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20359-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS MIGUEL PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 14, 2019)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Carlos Perez appeals his conviction, by jury, for being a felon in possession

of a firearm under 18 U.S.C. § 922(g)(1) and possession of a firearm in furtherance

of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i).  He also appeals his

below-guidelines 180-month total sentence.  On appeal, Perez argues that: (1) the government failed to prove, beyond a reasonable doubt, that he knowingly possessed a firearm and that the firearm was possessed in furtherance of a drug trafficking crime; and (2) the district court erroneously counted Perez as a career offender under the Sentencing Guidelines because his prior conviction for aggravated battery under Fla. Stat. § 784.045(1)(a) is not a crime of violence.  After careful review, we affirm.

We review a sufficiency-of-the-evidence claim de novo to assess "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Mercer, 541 F.3d 1070, 1074 (11th Cir. 2008).  In doing so, we view the facts and draw all reasonable inferences in the light most favorable to the government.  Id.  We usually review de novo a district court's determination that a defendant's prior convictions were crimes of violence under the Guidelines.  United States v. Lockley, 632 F.3d 1238, 1240 (11th Cir. 2011).  But if a defendant did not object to a sentencing ruling in district court, we review only for plain error.  United States v. Lejarde-Rada, 319 F.3d 1288, 1290 (11th Cir. 2003).  To establish plain error, the defendant must show an error that is plain and that affected his substantial rights.  United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).  If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial

2

proceedings.  Id.  No plain error can be found if no precedent from the Supreme Court or this Court directly resolves the issue.  Lejarde-Rada, 319 F.3d at 1291.

First, we are unpersuaded by Perez's claim that the evidence was insufficient to support his convictions.  A defendant's possession of a firearm under § 922(g) can be shown by evidence that he actually or constructively possessed the firearm, which means he had ownership, dominion, or control over an object itself or control over the premises in which the object is concealed.  United States v. Beckles, 565 F.3d 832, 841 (11th Cir. 2009).  Notably, a defendant's mere presence in the area of an object or awareness of its location is not sufficient to establish possession.  Id.

To sustain a § 924(c) conviction, a firearm must have been used in furtherance of a drug-trafficking crime.  This requires "the prosecution [to] establish that the firearm helped, furthered, promoted, or advanced the drug trafficking."  United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002).  However, "the presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction."  Id. at 1253.  The nexus between the gun and the drug operation can be established by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found."  Id. (quotation omitted).

3

Here, the evidence, viewed in the light most favorable to the government, sufficiently supports the verdict that Perez knowingly possessed a firearm. Detective Walter Singer of the City of Miami Police Department testified that when Perez's residence was searched, a .9 millimeter round of ammunition was found in Perez's bedroom, and a handgun with the same .9 mm caliber of ammunition in it was found in another bedroom, described as the "east bedroom." As Detective Singer explained, the east bedroom was separated by a piece of plywood, which had a hole in it large enough to pass a firearm through. The government also introduced a phone call, made by Perez from jail, which was recorded and played to the jury. In the call, Perez declared that "when I saw [the police] I ran into the other room next to the refrigerator and [I] got rid of that shit." Perez also said, "what gun possession, where was I carrying the gun? That was in another room." On this record, there was sufficient evidence for a reasonable jury to find that Perez knowingly possessed the firearm found in the residence.

What's more, the jury had ample evidence to find that Perez was not merely present at the residence, but constructively possessed the firearm -- he referred to the residence as "my house" in the jail call, and his passport was found in the residence, along with a rental receipt and cable bill in his name for the residence. While Perez says that the east bedroom, where the firearm was found, was a separate residence, no evidence suggested that someone else resided there or that he did not exercise

4

dominion and control over the firearm. Rather, Perez's jail call indicated that he was aware of the firearm's presence in the east bedroom; he said: "what gun possession . . . [t]hat was in another room." Thus, there was more than sufficient evidence for a reasonable jury to find that Perez, either directly or constructively, possessed the firearm beyond a reasonable doubt, and we affirm the felon-in-possession conviction. See Mercer, 541 F.3d at 1074; Villarreal, 613 F.3d at 1359.

The evidence also supports a verdict that the firearm was used in furtherance of a drug trafficking crime. As for the drug trafficking scheme, Detective Singer testified that Perez had been running a store-like residence, where people would line-up to buy crack cocaine at the residence in question and could use the drug on site. While working in an undercover capacity, Singer had conducted a "buy-walk operation," in which he purchased narcotics at the residence but did not make an arrest. Singer testified that a black box found during the search -- containing rock cocaine, money, and a scale -- was the same as the one Perez had taken drugs from during Singer's previous buy-walk operations. Further, 200 grams of crack cocaine and $3,633 was found at the residence, indicating more than casual drug dealing.

As for the firearm's nexus to the drug trafficking scheme, the firearm was loaded and readily accessible. While there was a plywood wall separating the rooms, the gun was located in the open and in close proximity to the drugs and drug profits; in fact, there was space to pass objects between the rooms. And based on Perez's

5

jail call, he attempted to hide the firearm when learning of the police's presence, and, as a convicted felon, Perez was not permitted to possess the gun for lawful purposes, further linking his firearm possession to his drug-trafficking operation.

In short, sufficient evidence existed for a reasonable jury to find that the firearm was kept to help, further, promote, or advance the drug operation being run under Perez's dominion and control. See Timmons, 283 F.3d at 1253. We affirm the conviction of possession of a firearm in furtherance of a drug-trafficking crime.

We also reject Perez's challenge to the district court's determination -- to which he did not object in district court -- that he is a career offender under the Sentencing Guidelines. The Guidelines provide for a sentencing enhancement if a defendant was 18-years-old at the time of the instant offense, the instant office is either a crime of violence or a controlled substance offense, and he has at least two prior felony convictions of one or the other. U.S.S.G. § 4B1.1(a). A "crime of violence" under the Guidelines is a felony offense that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2. The first clause is known as the elements clause, while the latter lists enumerated offenses. Lockley, 632 F.3d at 1241.

6

To decide whether an offense qualifies under the elements clause, we employ a categorical approach. See id. at 1240. Under that approach, we look only to the fact of conviction and the statutory definition of the prior offense. See id. Under the elements clause, "the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (defining physical force in the context of the Armed Career Criminal Act ("ACCA")); see also Gilbert v. United States, 640 F.3d 1293, 1309 n.16 (11th Cir. 2011) (noting that, because the definition of "violent felony" in the context of the ACCA is "virtually identical" to the definition of a crime of violence under the Guidelines, decisions about one apply to the other).

A person commits Florida aggravated battery who, in committing a battery, (1) intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or (2) uses a deadly weapon. Fla. Stat. § 784.045(1)(a). Florida battery occurs when a person (1) actually and intentionally touches or strikes another person against the will of the other; or (2) intentionally causes bodily harm to another person. Fla. Stat. § 784.03(1)(a).

We've held that a Florida aggravated battery conviction qualifies as a violent felony under the elements clause because, under either of the two alternatives in Fla. Stat. § 784.045(1)(a), an aggravated battery has as an element the use, attempted use, or threatened use of physical force against the person of another. Turner v. Warden

7

Coleman FCI (Medium), 709 F.3d 1328, 1341 (11th Cir. 2013), abrogated on other grounds by United States v. Hill, 799 F.3d 1318, 1321 n.1 (11th Cir. 2015); see also United States v. Vereen, No. 17-11147, --- F.3d ----, *8 & n.5 (11th Cir. April 5, 2019) (upholding our determination in Turner that Florida aggravated battery is a crime of violence under the ACCA).

Under our prior-panel-precedent rule, a panel is bound by a prior panel's decision until overruled by the Supreme Court or by this Court en banc. United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998). There is no exception to this rule based upon an overlooked reason or a perceived defect in the prior panel's reasoning or analysis of the law in existence at the time. United States v. Fritts, 841 F.3d 937, 942 (11th Cir. 2016).

Here, under plain-error review, Perez fails to point to precedent from the Supreme Court or this Court directly resolving his claim that Florida aggravated battery is not a crime of violence under the Guidelines. To the contrary, we've conclusively held that Florida aggravated battery is a crime of violence. Turner, 709 F.3d at 1341; Vereen, No. 17-11147 at *8. As for Perez's argument that Turner was wrongly decided and called into question, we are bound by our prior precedent until it is overruled by the Supreme Court or this Court sitting en banc. Steele, 147 F.3d at 1317-18. Accordingly, we affirm.

**AFFIRMED**.